IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Epicenter Partners, LLC, et al.,<br><br>　　　　Debtors.<br><br>CPF Vaseo Associates, LLC,<br><br>　　　　Appellant,<br>vs.<br><br>Sonoran Desert Land Investors, LLC, et al.,<br><br>　　　　Appellees. | No. 2:17-cv-03346-SPL<br>No. 2:16-bk-05493-MCW<br><br>**ORDER** |

Appellant CPF Vaseo Associates, LLC ("CPF") brings an appeal pursuant to 28 U.S.C. § 158 of a judgment issued by the United States Bankruptcy Court, District of Arizona (the "Bankruptcy Court"), in the Chapter 11 bankruptcy cases of Epicenter Partners LLC, et al., Case No. 2:17-cv-03346-SPL. This Court has reviewed the Bankruptcy Court's ruling denying the inclusion of per diem late fees in CPF's proofs of claim and CPF's request for discovery and an evidentiary hearing on the same issue. The appeal is fully briefed, and for the reasons that follow, the judgment will be affirmed.

**I.    Background**

Appellees Sonoran Desert Land Investors, LLC ("SDLI"), East of Epicenter, LLC ("EoE"), and Gray Phoenix Desert Ridge II, LLC ("GPDR II", together with SDLI and EoE, the "Debtors") entered into two loan agreements with Pacific Coach, Inc. ("Pacific

Coach"). (Doc. 12-1 at 1.) The first loan was made to SDLI and GPDR II in the principal amount of $26.5 million (the "$26.5 MM Loan"), evidenced by a loan agreement and promissory note dated December 10, 2014, and the second loan was made to EoE in the principal amount of $3.7 million (the "$3.7 MM Loan," together with the $26.5 MM Loan the "Loans"), evidenced by a loan agreement and promissory note dated September 17, 2014. (Doc. 12-1 at 3.) The loan agreements call for steep penalties in the event of the Debtors' default.

Section 2.5(e) of the $26.5 MM Loan Agreement provides:
> In the event that any payment of principal or interest shall not be made on the due date (including without limitation the Maturity Date) and such payment remains outstanding five (5) days after the due date, Borrower agrees to pay a late charge equal to Ten Thousand Dollars ($10,000) per day for each day the payment is so overdue beginning from the payment due date through and including the day the delinquent payment is made. Such late charge represents the reasonable estimate of Lender of a fair average compensation for the loss that may be sustained by lender due to the failure of Borrower to make timely payments.

(Doc. 12-2 at 110.)

Section 8 of the $26.5 MM Promissory Note provides:
> (a) If any payment of interest, principal or impounds is not received by Lender when due (including without limitation at maturity) and such payment remains outstanding five (5) days after the due date, Borrower agrees to pay a late charge equal to Ten Thousand Dollars ($10,000.00) per day for each day

2

the payment is so overdue beginning from the payment due date through and including the day the delinquent payment is made.

(b) If any sum is not paid on the due date thereof, then (in addition to the late charge state above) the interest rate on the unpaid principal balance shall be increased to eighteen percent (18%) per annum from the date of the last payment and such rate shall continue until all payments have been made current.

(Doc. 12-2 at 135.)

Section 2.5(e) of the $3.7 MM Loan Agreement provides:

In the event that any payment of principal or interest shall not be made on the due date (including without limitation the Maturity Date) and such payment remains outstanding five (5) days after the due date, Borrower agrees to pay a late charge equal to One Thousand Five Hundred Dollars ($1,500.00) per day for each day the payment is so overdue beginning from the payment due date through and including the day the delinquent payment is made. Such late charge represents the reasonable estimate of Lender of a fair average compensation for the loss that may be sustained by lender due to the failure of Borrower to make timely payments.

(Doc. 12-2 at 71.)

Section 8 of the $3.7 MM Promissory Note provides:

(a) If any payment of interest, principal or impounds is not received by Lender when due (including without limitation at

> maturity) and such payment remains outstanding five (5) days after the due date, Borrower agrees to pay a late charge equal to One Thousand Five Hundred Dollars ($1,500.00) per day for each day the payment is so overdue beginning from the payment due date through and including the day the delinquent payment is made.
>
> (b) If any sum is not paid on the due date thereof, then (in addition to the late charge state above) the interest rate on the unpaid principal balance shall be increased to eighteen percent (18%) per annum from the date of the last payment and such rate shall continue until all payments have been made current.

(Doc. 12-2 a 99.)

SDLI and GPDR II defaulted on the $26.5 MM Loan by failing to make an interest payment due on February 9, 2016, and EoE defaulted on the $3.7 MM Loan by failing to make the required monthly payment due on January 16, 2016. Neither payment default was cured within five days. (Doc. 12-1 at 4–5.) As a consequence, $10,000 per diem late fees started to accrue on the $26.5 MM Loan beginning on February 10, 2016, and $1,500 per diem late fees began to accrue on the $3.7 MM Loan beginning on January 17, 2016 (together, the "Late Fees"). (Doc. 12-1 at 4–5.) The Debtors did not make any subsequent payments on the Loans and failed to pay off the Loans in full on or before the dates the Loans were set to mature. Pacific Coast assigned its interest in the Loans to CPF on June 3, 2016. (Doc. 15 at 5.)

On July 6, 2016, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Doc. 12-1 at 3.) The cases were jointly administered, and the Bankruptcy Court set a general claims bar date of October 20, 2016. (Doc. 12-1 at 3.) CPF filed proofs of claims in the bankruptcy cases for, among other things, outstanding

principal, interest, attorneys' fees, costs, and the per diem late fees owed under the terms of the loan agreements. (Doc. 12-1 at 4.) In total, CPF asserted a secured claim related to the $26.5 MM Loan in the amount of $30,572,496.22 and a secured claim related to the $3.7 MM Loan in the amount of $4,364,146.17. (Doc. 12-1 at 3.)

On July 27, 2017, the Debtors filed objections to the inclusion of the Late Fees in CPF's proofs of claim, arguing that the Late Fees constituted unreasonable and unenforceable penalties under Arizona law. (Doc. 12-1 at 6.) CPF filed an omnibus response in opposition to the Debtors' objections arguing, among other things, that the per diem late fees were not penalties for untimely payment, but rather a reasonable means of allowing CPF to recover its opportunity cost damages while the Loans were in default. The Bankruptcy Court held a hearing to address the Debtors' objections on August 16, 2017 (the "August 16th Hearing"). (Doc. 12-1 at 6.) The Debtors filed and served a notice of the hearing on July 27, 2017, which provided CPF and all parties-in-interest with 20 days' notice of the hearing, 10 days shorter than the 30 days required under Federal Rule of Bankruptcy Procedure 3007. (Doc. 12-1 at 6.)

The Bankruptcy Court heard oral argument on the Debtors' objections at the August 16th Hearing. During the hearing, CPF asked the Bankruptcy Court to set an evidentiary hearing and allow CPF to take discovery in order to identify the losses that may have been anticipated by Pacific Coach at the time of formation of the loan agreements. (Doc. 12-1 at 6.) At the end of the hearing, the Bankruptcy Court took the parties' arguments under advisement. On September 11, 2017, the Bankruptcy Court entered its ruling finding that the Late Fees constituted unreasonable penalties that were unenforceable under Arizona law and denying CPF's request for discovery and an evidentiary hearing on the Late Fees. (Doc. 12-1 at 6-7.) CPF timely appealed.

**II.    Standard of Review**

Under 28 U.S.C. § 158(a)(1), the Court has jurisdiction over appeals from "final judgments, orders, and decrees" of bankruptcy judges. The Court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *Deck v. Tramiel*

(*In re JTS Corp.*), 617 F.3d 1102, 1109 (9th Cir. 2010); *Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1166 (9th Cir. 1990). The Court must accept the Bankruptcy Court's findings of fact unless the Court "is left with the definite and firm conviction that a mistake has been committed[.]" *Greene v. Savage* (*In re Greene*), 583 F.3d 614, 618 (9th Cir. 2009.) The Court reviews the evidence in the light most favorable to the prevailing party. *Lozier v. Auto Owners Ins. Co.*, 951 F.2d 251, 253 (9th Cir. 1991). The Bankruptcy Court's decision not to conduct an evidentiary hearing is reviewed for abuse of discretion. *Tyner v. Nicholson (In re Nicholson)*, 435 B.R. 622, 629 (9th Cir. BAP 2010), *citing Khachikyan v. Hahn*, 335 B.R. 121, 128 (9th Cir. BAP 2005). The abuse of discretion test requires the Court to first "determine *de novo* whether the court identified the correct legal rule to apply to the relief requested," and if the court identified the correct legal rule, it abused its discretion only if its "application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).

## III. Discussion

The first issue raised in this appeal is whether the late fee provisions quoted above properly award liquidated damages to CPF under the terms of the loan agreements or create an unenforceable penalty under Arizona law. Generally, courts have the discretion to respect contracting parties' right to stipulate to liquidated damages for a breach of contract. *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 393 P.3d 449, 453 (2017) (hereinafter "*Dobson Bay*"). Whether a contract provides for liquidated damages or a penalty is an issue of law that this Court reviews *de novo*. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 16 (App. 2010).

The analysis set forth by the Supreme Court of Arizona in *Dobson Bay* is controlling in this case. The *Dobson Bay* court set forth a test, stemming from the Restatement (Second) of Contracts § 356(1), providing that a liquidated damages provision is enforceable, "only at an amount that is reasonable in the light of the

anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Dobson*, 393 P.3d at 452; Restatement (Second) of Contracts § 356 (1981) (hereinafter "Restatement Second".)

By this standard, a court may find that the amount of liquidated damages set forth in a contract is reasonable to the extent that the amount approximates the actual loss caused by the breach and the loss anticipated at the time of contract formation, even if the fixed amount does not approximate the actual loss of the non-breaching party. *Dobson*, 393 P.3d at 452. In analyzing the difficulty of proof of loss, a court should consider (1) the difficulty of proving that a loss occurred or (2) establishing its amount with certainty. *Id*. at 456. The analysis in *Dobson Bay* rejects bright-line rules about the proper form of liquidated damages agreed upon between parties. Instead, the standard calls for considering all of the facts and circumstances in a case when determining whether liquidated damages are reasonable and enforceable.

As explained by Comment (b) to § 365 of the Restatement Second:

> "[i]f the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable."

*Dobson*, 393 P.3d at 452; Restatement Second Comment (b).

The *Dobson Bay* court held that a borrower who defaulted on a balloon payment for a conventional loan with a fixed interest rate was not required to pay the flat 5% late fee provided in its loan agreement as liquidated damages for default. After outlining the standard for determining whether a liquidated damages provision qualifies as an unenforceable penalty under Arizona law, the court found that the 5% flat fee did not reasonably forecast the anticipated damages resulting from the borrower's default

7

because the late fee was a static, one-time flat fee that had no bearing in the length of time of the default. *Dobson*, 393 P.3d at 453. The court also found that the 5% flat fee duplicated other fees triggered by the default, and that the amount of other fees in addition to the 5% flat fee was grossly disproportionate to the reasonable amount necessary to compensate the non-breaching party. In considering whether the flat fee was a reasonable approximation of the actual losses suffered by the non-breaching party, the court held that the $1.4 million payment prompted by the 5% flat fee did not align with the minimal administrative expenses that the non-breaching party encountered from the default. *Id.* at 455. The court stated that the non-breaching party was compensated "for the loss of use of money" by the borrower's obligation to pay regular and default interest. *Id.* On the issue of difficulty of proof of loss, the court stated that the non-breaching party would have had an easy time proving that it sustained a loss as a result of the default had a loss occurred. *Id.* at 456. The court ultimately held that the 5% flat fee was an unenforceable penalty because the payment did not reasonably approximate the non-breaching party's anticipated or actual losses, and the difficulty of proving such loss was slight.

CPF argues that *Dobson Bay* is distinguishable from the facts at hand because the Late Fees in this case are not a fixed and definite flat fee, such as the 5% fee on a balloon payment, but instead, accrue daily for the duration of the Debtors' default. (Doc. 12-1 at 10.) CPF asserts that it suffered "opportunity cost damages" from the Debtors' default on the Loans. (Doc. 12-1 at 6.) CPF argues that the liquidated damages provision does not rise to the level of an unenforceable penalty because, in contrast to the situation in *Dobson Bay*, the total amount of the Late Fees varies over time. (Doc. 12-1 at 11.) And, while the Late Fees reflect a fixed daily dollar amount, the per diem accrual of the Late Fees should make the difference in the determination of whether the fees constitute a penalty. The Debtors, similarly to the borrower in *Dobson Bay*, argue that the Late Fees are not a reasonable forecast of anticipated damages nor reasonably related to the actual damages incurred by CPF because CPF will be compensated by the accrual of interest.

8

(Doc. 15 at 9.) However, it is this Court's opinion that even if the Late Fees are not identical to the "fixed and definite sum" reflected in *Dobson Bay*, the Late Fees still constitute a penalty and are unenforceable under Arizona law.

Section 356(1) of the Restatement Second provides that the amount of liquidated damages forecasted by the parties may be reasonable if it approximates either the loss anticipated by the parties at the time of contract or that actually resulted. *Dobson*, 393 P.3d at 452; Restatement Second Comment (b). If the difficulty of proof of loss is slight and either no loss occurs or the stipulated sum is grossly disproportionate to the loss, the parties' stipulation would be unreasonable and therefore unenforceable as a penalty. *Id*.

We agree with the Debtors' argument that the Late Fees are not a reasonable forecast of the losses anticipated by Pacific Coach at the time of formation of the contract. As stated in *Dobson Bay*, the fixed and definite nature of a liquidated damages provision is only one factor improving the likelihood that liquidated damages are enforceable, but courts still must place greater weight on the specific facts and circumstances of a dispute. *Dobson*, 393 P.3d at 453, *citing Miller Cattle Co. v. Mattice*, 38 Ariz. 180, 190 (1931). The variable nature of a liquidated damages provision does not make it *de facto* valid and enforceable. It is still within this Court's discretion to find the Late Fees unreasonable and unenforceable even if the terms of the loan agreements provide that the amount of liquidated damages may vary over time.

CPF argues that the Debtors have not met their burden in proving that the Late Fees were unreasonable. (Doc. 12-1 at 7.) This Court agrees. The Debtors submitted the loan agreements as evidence of the Late Fees alongside argument that certain other provisions of the loan agreements reasonably compensate CPF in the event of default. (Doc. 12-1 at 8.) From the terms of the loan agreements, and in the absence of any information from CPF demonstrating its damages, this Court finds that the Late Fees were unreasonable.

The record before this Court does not demonstrate that $6 million in Late Fees approximates CPF's anticipated or actual losses from the default. In fact, while CPF

points the finger at the Debtors for purportedly failing to meet their burden, the record does not address any actual losses incurred by CPF from the default. CPF is correct in its assertion that the Debtors have the burden of persuading this Court that the Late Fees provisions impose an unenforceable penalty, and the Debtors' have met that burden. *Dobson*, 393 P.3d at 453, *citing United Behavioral Health v. Maricopa Integrated Health Sys.*, 240 Ariz. 118, 122 (2016) (stating that the party claiming that a contractual arbitration provision is preempted by federal law bears the burden of proving it.) But CPF is the claimant and the appellant in this matter, meaning that CPF has the ultimate burden of persuading the Court that $6 million in accrued Late Fees is a reasonable approximation of its anticipated or actual damages suffered from the Debtors' default. *Wright v. Holm (In re Holm)*, 931 F. 2d 620, 623 (9th Cir. 1991).

In the precedent cited by CPF, *In re Holm*, the Ninth Circuit rejected a debtor's appeal for relief from a creditor's proof of claim because the debtor solely relied on argument and failed to provide any evidence demonstrating its contention that the creditor's claim contained improper interest. *Id*. In the record before this Court, CPF admits that the Late Fees are included in the total amount of its claims against the Debtors, so the *In re Holm* precedent is not relevant. (Doc. 12-1 at 4.) Furthermore, the Debtors in this case provided the requisite evidence to support their arguments in the form of loan documents. (Doc. 12-1 at 8.) CPF cannot shirk its burden of demonstrating anticipated and actual losses by simply arguing that the Debtors' failed to provide any evidence on that point. The Debtors provided arguments and evidence of the loan agreement provisions, which was sufficient to meet their burden.

Furthermore, the Late Fees are duplicative of other provisions in the loan agreements intended to compensate CPF in the event of the Debtors' default, specifically in the form of default interest. CPF will be sufficiently compensated for the loss of use of the default payments through the inclusion of accrued regular interest and default interest in its proofs of claim approved by the Bankruptcy Court. *Ariz. E.R.R. Co. v. Head*, 26 Ariz. 259, 262 (1924) ("Interest is the compensation paid for the use of money.")

Therefore, CPF will be compensated for its losses, both for loss of use of the payments due under the Loans and opportunity costs, by the Debtors' obligation to pay regular interest at a rate of 12% and default interest at a rate of 18%. (Doc. 12-3 at 519.) The loan agreements and the claim amounts approved by the Bankruptcy Court also compensate CPF for attorneys' fees and collection costs. As the Debtors noted, CPF is being compensated with more than $14,000 per day in interest payments, making the added costs of the Late Fees unnecessarily punitive. (Doc. 15 at 10.)

It is this Court's opinion that the 18% default interest rate set forth in the loan agreements represented appropriate compensation for the "lost opportunity costs" alleged by CPF, the amount of which was already included in the amount of CPF's claims allowed in the bankruptcy cases. The fact that CPF was not able to benefit from compounding interest is of no consequence to the reasonableness of the Late Fees. The loan agreements provided for a default interest rate in addition to the Late Fees. Thus, CPF's lost opportunity costs were in fact compensated by the 18% default interest rate and did not need to be compensated separately by the Late Fees.

This case is distinguishable from other cases in which courts have upheld liquidated damages provisions that accrued over time. For example, in *MetLife Capital*, a court concluded that a 5% late charge assessed against delinquent monthly installment payments of about $14,000 did not constitute an unenforceable penalty for untimely payment. *MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 159 N.J. 484 (1999). Notably, the standard for testing the validity of liquidated damages applied by the court was reasonableness under the totality of the circumstances. *Id*. At 495. In *MetLife Capital*, the court held that the late fee was reasonable in light of testimony stating that the fee complied with normal industry standards. The record before this Court shows no such evidence. The fees at issue in *MetLife Capital*, approximately $700 per month on a $1.5 million loan, were nominal compared to the $1,500 and $10,000 daily fees accrued as a result of the Debtors' default, in a total amount in excess of $6 million, given that there are default interest provisions and other provisions in the loan

agreements available to compensate CPF for its fees and lost opportunity costs. The amount of the Late Fees in this case also demonstrates a significant departure from the $20 per diem late fees in the *Accelerated Assets* case cited by CPF in its Opening Brief. *Accelerated Assets, LLC v. Alexander Properties, Inc.*, No. 1 CA-CV 10-0203, 2011 WL 95660 (Ariz. Ct. App. Jan. 6, 2011) (Doc. 12-1 at 10.)

The Late Fees did not reasonably estimate the actual losses suffered by CPF as the result of the untimely payment. CPF has not provided this Court with any argument or evidence that the Late Fees represented reasonable compensation for actual losses suffered as a result of the Debtors' default. And, by this Court's review, CPF has not sustained any actual losses. The Bankruptcy Court was correct in considering the facts and circumstances surrounding CPF's purchase of the Loans, including the fact that CPF came into ownership of the Loans one month before the Debtors filed their bankruptcy petitions. The Bankruptcy Court touched on this issue when it stated that CPF "bought into the default" and therefore suffered no anticipated damages. (Doc. 12-3 at 520.) And while CPF disagrees with the Bankruptcy Court's characterization, these were necessary observations in determining the actual losses suffered by CPF and were not made in error.

We next consider the difficulty of proving the losses sustained by CPF by examining the difficulty of either proving that a loss occurred or establishing its amount with certainty. Restatement Second Comment (b). In the event that CPF suffered from a loss of use of the untimely payments or opportunity costs due to the Debtors' default, it would have been simple for CPF to quantify that loss. However, the record before this Court does not establish that any losses were incurred by CPF from the default, surely nothing that rises to the level of $6 million in Late Fees. The Debtors' Answering Brief shed some light on this point by reiterating CPF's own estimates of the costs and attorneys' fees incurred as the result of the default, totaling approximately $813,606.68 in pre-petition and post-petition amounts as of July 31, 2017. (Doc. 15 at 11.) Again, CPF

works against its own interest in failing to provide any evidence on how the $6 million in accrued Late Fees is just.

Accordingly, this Court affirms the Bankruptcy Court's ruling that the Late Fees qualify as an unenforceable penalty under Arizona law. The Late Fees neither reasonably forecasted CPF's anticipated damages for the losses identified in the Late Fee provisions nor reasonably approximated CPF's actual losses. The difficulty of proving CPF's losses as a result of the Debtors' default was minimal. CPF will be fairly compensated for any losses through the amounts accrued from the default and regular interest rates, the amounts of which were already included in the proofs of claim approved by the Bankruptcy Court. For the aforementioned reasons, this Court affirms the Bankruptcy Court's decision on denying the inclusion of the Late Fees in CPF's proofs of claim.

Finally, CPF argues that the Bankruptcy Court erred in scheduling the hearing on the Debtors' objections to CPF's proofs of claim 20 days after the Debtors filed notice of the hearing. CPF argues that pursuant to Federal Rule of Bankruptcy Procedure 3007(a)(1), the Debtors were required to file and serve the notice of their objections at least thirty days before any scheduled hearing on the objections. Fed. R. Bankr. P. 3007(a) (Doc. 12 at 14–15.) CPF argues that the pre-mature scheduling of the hearing was an improper abuse of discretion. (Doc. 12 at 15.) Per Federal Rule of Bankruptcy Procedure 9006(c)(1), it is within the Bankruptcy Court's discretion to shorten the notice period for a hearing so long as each party is in fact provided with notice and is not prejudiced by the shortened deadline. Fed. R. Bankr. P. 9006(c). We find that it was not an abuse of discretion for the Bankruptcy Court to shorten the notice period for the August 16th Hearing, as CPF was given actual notice of the hearing, was able to prepare for the hearing, and was fully heard on the issues.

Furthermore, we find that the Bankruptcy Court's decision to deny CPF's request for discovery and an evidentiary hearing was not an abuse of discretion. As CPF notes in its Opening Brief, Federal Rule of Civil Procedure 43(c) states that a court may take evidence when an issue turns on facts outside of the record and that a court has wide

discretion to do so. Fed. R. Civ. P. 43 (Doc. 12 at 15.) It was fully within the Bankruptcy Court's discretion, harboring full knowledge and consideration of the bankruptcy cases, to deny CPF's request for an evidentiary hearing and discovery on the Late Fees issue. For that reason, the Bankruptcy Court did not abuse its discretion in denying CPF's request for discovery and an evidentiary hearing.

## IV. Conclusion

The Court has reviewed the Bankruptcy Court's conclusions of law *de novo,* its compliance with the Federal Rules of Bankruptcy Procedure for abuse of discretion, and its findings of fact for clear error, and will affirm the Bankruptcy Court's judgment. Accordingly,

**IT IS ORDERED** that the order of the United States Bankruptcy Court is **affirmed**. The Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 16th day of May, 2018.

Honorable Steven P. Logan
United States District Judge